IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TARA THOMFORDE WOOD, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 16-995 |
| | ) | Chief Magistrate Judge Maureen P. Kelly |
| v. | ) | |
| | ) | |
| DAVID WOOD, WILBERT A. STINESPRING and THE WEST VIRGINIA CONFERENCE OF THE UNITED METHODIST CHURCH, | ) ) ) ) | |
| | ) | Re: ECF Nos. 16 and 19 |
| | ) | |
| Defendants. | ) | |

**OPINION AND ORDER**

**KELLY, Chief Magistrate Judge**

Plaintiff Tara Thomforde Wood ("Plaintiff") initiated this action against Defendants David Wood ("Wood"), Wilbert A. Stinespring ("Stinespring"), and The West Virginia Conference of the United Methodist Church ("the Conference") (collectively, "Defendants"), alleging that Defendants unlawfully and fraudulently conspired to have Plaintiff enter into a fraudulent and void marriage in order to obtain money, property and sex from her.

Presently before the Court is a Motion to Dismiss filed on behalf of Defendant Wood and a Motion to Dismiss submitted on behalf of Defendants Stinespring and the Conference. ECF Nos. 16, 19, respectively. For the reasons that follow, both Motions will be granted.

**I.  FACTUAL AND PROCEDURAL BACKGROUND**

According to the Complaint, sometime prior to July of 2008, Plaintiff, who lived in Canonsburg, Washington County, Pennsylvania, and Wood, who resided in West Virginia, met on the internet and decided to get married. ECF No. 1 ¶¶ 7.A, 7.C. Plaintiff and Wood filled out a marriage license application in the Register of Wills Office of Washington County,

Pennsylvania, on July 14, 2008. Id. ¶ 7.E; ECF No. 1-5 at 1. According to the license application, which was executed by both Plaintiff and Wood, the couple was to be married on July 19, 2008, at Plaintiff's home in Canonsburg, Pennsylvania. Id. Plaintiff alleges, however, that Wood insisted that they be married by his family's minister, Defendant Stinespring, and that the ceremony actually took place in Stinespring's home in Parkersburg, West Virginia.[1] ECF No. 1, ¶¶ 7.F, 7.G. Plaintiff claims that Defendants knew, and concealed from Plaintiff, that the marriage license issued in Pennsylvania was not valid in West Virginia and lulled Plaintiff into believing that she had entered into a valid marriage. Id. ¶¶ 7.H, 7.I, 7.J, 9. Plaintiff contends that Defendants fraudulently and knowingly conspired to induce Plaintiff to "cross state lines . . . to participate in a sham and void marriage" in order to "obtain money, property, sex and other items from [Plaintiff.]" Id. ¶¶ 7.I, 8.A.v.

Plaintiff further alleges that Wood "used his position as [Plaintiff's] 'husband' to intimidate and coerce her into cutting contacts with her friends;" that Wood unlawfully opened Plaintiff's mail addressed to her chiropractic offices; concealed mail from Plaintiff; monitored her phone calls; bullied her; and would abandon her while he made secretive trips. Id. ¶ 11. Plaintiff also alleges that Wood, who had worked as an automotive body technician and appraiser, induced Plaintiff to pay in excess of $10,000.00 for an "SCA franchise" and thousands of dollars to train Wood at the SCA franchise in Berkley, California; that Wood embezzled money from Plaintiff's chiropractic practice; coerced and defrauded Plaintiff into spending

---

[1] The form appended to the marriage license that the officiant is required to return to the Register of Wills following the wedding, which Plaintiff has attached to the Complaint, also shows that the ceremony took place in Canonsburg, Pennsylvania. ECF No. 1-5 at 4. See 23 Pa. C.S. §§ 1501, 1504. Plaintiff, however, contends that the statement is false and that Stinespring's signature which appears on the on the document was forged. ECF No. 1 ¶ 8.

2

money on a house and garage Wood claimed to own in West Virginia and to pay for renovating Wood's home in West Virginia; and that Wood was verbally and mentally abusive to Plaintiff which included an incident where Wood allegedly flashed a "secretly purchased" handgun at Plaintiff in an attempt to intimidate and coerce her into allowing Wood to spend Plaintiff's earnings for his own purposes. Id. ¶¶ 12-16.

Plaintiff filed a Divorce Complaint in the Court of Common Pleas of Washington County, Pennsylvania, on May 16, 2013, which she contends she would not have done if she had known that her marriage to Wood was void. Id. ¶¶ 17, 18.[2] Wood, who was and/or is unemployed, subsequently filed for spousal support, which Plaintiff alleges was an act in furtherance of Defendants' illegal acts, and which ultimately resulted in Plaintiff being ordered to pay Wood $2,496.11 a month, and arrears at $200.00 a month. In addition, Plaintiff claims that a lien in an amount in excess of $22,000.00 was placed on her for arrears and that she was also ordered to pay Wood's health insurance. Id. ¶ 20. Consequently, Plaintiff claims, she has been denied credit and business opportunities which Defendants knew would occur and cause Plaintiff economic harm. Id. ¶¶ 21, 21.B.

Plaintiff alleges that she did not learn that her marriage to Wood was void until December of 2015, when she met with Attorneys Brzustowicz and Marotta who, although no longer representing Plaintiff, filed a stipulation on her behalf on July 7, 2015, relative to the support

---

[2] The Divorce Complaint, which Plaintiff claims she did not read, ECF No. 1 ¶ 17.B, but which she nevertheless verified as true and correct, ECF No. 16-2 at 6, also states that Plaintiff and Wood were married in Washington County, Pennsylvania. ECF No. 16-2 at 4, ¶ 4. Plaintiff, however, claims that that when asked by her attorney who drafted the Divorce Complaint where she was married, Plaintiff believed he was asking where the marriage license was issued and not where the ceremony took place. ECF No. 1 ¶ 17.A.

3

proceedings in state court, and initiated the instant action on Plaintiff's behalf.  Id. ¶ 17.D; ECF No. 16-8; ECF No. 1 at 53.

Plaintiff filed the instant Complaint on July 1, 2016, bringing federal claims against all three Defendants for violations of the federal Racketeering Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961-1968 (Count I); the Mann Act, 18 U.S.C. §§ 2421, *et seq.* (Count II); and the Thirteenth Amendment to the United States Constitution (Count VIII).  Plaintiff has also brought state law claims against all three Defendants for fraud (Count IV); negligent misrepresentation (Count V); and common law conspiracy (Count VI), as well as a state law claim for negligence against the Conference alone (Count III).  In addition, at Count VIII of the Complaint, Plaintiff sets forth a Motion to Stay the on-going state court divorce and support proceedings pending resolution of this lawsuit.

Defendant Wood filed a Motion to Dismiss and brief in support on September 26, 2016, ECF Nos. 16, 17, and Defendants Stinespring and the Conference filed a Joint Motion to Dismiss and accompanying brief on that same date.  ECF Nos. 19, 20.  Plaintiff filed a Brief in Opposition to Defendants' Motions to Dismiss on November 18, 2016, addressing both Motions.  ECF No. 32.  As such, both Motions are ripe for review.

## II.    STANDARD OF REVIEW

In assessing the sufficiency of the complaint pursuant to a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), the Court must accept as true all material allegations in the complaint and all reasonable factual inferences must be viewed in the light most favorable to the plaintiff.  Odd v. Malone, 538 F.3d 202, 205 (3d Cir. 2008).  The Court, however, need not accept bald assertions or inferences drawn by the plaintiff if they are unsupported by the facts set

forth in the complaint. See California Pub. Empl. Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004), *citing* Morse v. Lower Merion Sch. Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the Court accept legal conclusions set forth as factual allegations. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007). Rather, "[f]actual allegations must be enough to raise a right to relief above the speculative level." Id., *citing* Papasan v. Allain, 478 U.S. 265, 286 (1986). Indeed, the United States Supreme Court has held that a complaint is properly dismissed under Fed. R. Civ. P. 12(b)(6) where it does not allege "enough facts to state a claim to relief that is plausible on its face," id. at 570, or where the factual content does not allow the court "to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). See Phillips v. Cty. of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008) (finding that, under Twombly, "labels, conclusions, and a formulaic recitation of the elements of a cause of action" do not suffice but, rather, the complaint "must allege facts suggestive of [the proscribed] conduct" and that are sufficient "to raise a reasonable expectation that discovery will reveal evidence of the necessary element[s] of his claim").

### III. DISCUSSION

#### A. Plaintiff's RICO Claims (Count I)

Plaintiff purports to bring RICO claims under 18 U.S.C. §§ 1962(b), (c) and (d), which provide:

> (b) It shall be unlawful for any person through a pattern of racketeering activity or through collection of an unlawful debt to acquire or maintain, directly or indirectly, any interest in or control of any enterprise which is engaged in, or the activities of which affect, interstate or foreign commerce.
>
> (c) It shall be unlawful for any person employed by or associated with any enterprise engaged in, or the activities of which affect, interstate or foreign

> commerce, to conduct or participate, directly or indirectly, in the conduct of such enterprise's affairs through a pattern of racketeering activity or collection of unlawful debt.
>
> (d) It shall be unlawful for any person to conspire to violate any of the provisions of subsection (a), (b), or (c) of this section.

ECF No. 2 ¶ 1.

### 1. Section 1962(b)

As this Court has recently stated, "[t]he key feature of a RICO § 1962(b) theory is that Defendants engaged in racketeering to acquire control over an enterprise," which requires a plaintiff to plead, *inter alia*, that defendant has an interest in an enterprise and gained or maintained that interest through a pattern of racketeering. Ferguson v. Moeller, 2016 WL 1106609, at *4 (W.D. Pa. Mar. 22, 2016), *quoting* Macauley v. Estate of Nicholas, 7 F. Supp. 3d 468, 485 (E.D. Pa. 2014). "Additionally, a plaintiff 'must show injury from the defendant's acquisition or control of an interest' of the enterprise via racketeering activities." Id.

Here, Plaintiff has not alleged any facts to support a theory that Defendants had and/or have an interest in a separate or identifiable enterprise or that they gained and/or maintained that interest through a pattern of racketeering. Rather, Plaintiff has merely alleged an informal association in fact among Defendants. Because there is no separate, identifiable "enterprise," the Complaint fails to plead the nature of Defendants' interest in the enterprise, or that they gained/maintained that interest through a pattern of racketeering. Similarly, Plaintiff has failed to plead how her injury resulted from Defendants' control over the "enterprise," rather than from the underlying alleged racketeering activity. See Ferguson v. Moeller, 2016 WL 1106609, at *4, *citing* Lightning Lube, Inc. v. Witco Corp., 4 F.3d 1153, 1191 (3d Cir. 1993) ("holding that a

6

RICO § 1962(b) claim cannot merely parrot a § 1962(c) claim, but instead requires the assertion of an injury independent from that caused by the pattern of racketeering"). Plaintiff therefore has failed to state a plausible claim under Section 1962(b). Id.

   2.   **Section 1962(c)**

To succeed on a claim brought pursuant to Section 1962(c) a plaintiff must show that the defendants 1) conducted 2) an enterprise 3) through a pattern 4) of racketeering activity 5) which resulted in injury to the plaintiff's business or property. Id. The Court finds that Plaintiff has failed to plead facts from which either the existence of an enterprise or a pattern of racketeering activity can be inferred and thus Plaintiff has failed to state a claim under Section 1962(c) as well.

An enterprise is defined broadly under the statute as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity." 18 U.S.C. § 1961(4). The definition encompasses organizations such as corporations and partnerships and other legal entities as well as any group of individuals that do not constitute a legal entity but are "associated in fact." In re Ins. Brokerage Antitrust Litig., 618 F.3d 300, 364 (3d Cir. 2010). An association-in-fact enterprise, as is at issue here, "is 'a group of persons associated together for a common purpose of engaging in a course of conduct.'" Boyle v. U.S., 556 U.S. 938, 946 (2009), *quoting* U.S. v. Turkette, 452 U.S. 576, 583 (1981). It is proved "by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit." U.S. v. Turkette, 452 U.S. at 583. No matter how informal, an association-in-fact enterprise must nevertheless have some "structure," which at the very least must include: "a purpose, relationships among those

7

associated with the enterprise, and longevity sufficient to permit these associates to pursue the enterprise's purpose." Brokerage Antitrust Litig., 618 F.3d at 366, *quoting* Boyle v. U.S., 556 U.S. at 946.

Further, as set forth by this Court in Ferguson v. Moeller,

> In *United States v. Turkette*, 452 U.S. 576 (1981), the United States Supreme Court identified three characteristics of a RICO "enterprise." The first element requires proof of an "ongoing organization." *Id.* at 583. To satisfy this element, there must be some mechanism for controlling and directing the affairs of the group on an ongoing, rather than an ad hoc, basis. [*U.S. v.*] *Console*, 13 F.3d [641] 650-51 [(3d Cir. 1993)]. The second element requires proof "that the various associates function as a continuing unit." *Turkette*, 452 U.S. at 583. To satisfy this element, each person must perform a role in the group consistent with the organizational structure established by the first element and which furthers the activities of the organization." *Console*, 13 F.3d at 651. The third element demands proof that the enterprise is an "entity separate and apart from the pattern of activity in which it engages." *Turkette*, 452 U.S. at 583. As the *Console* Court explained: "it is not necessary to show that the enterprise has some function wholly unrelated to the racketeering activity, but rather that it has an existence beyond that which is necessary merely to commit each of the acts charged as predicate racketeering offenses." 13 F.3d at 651-52.
>
> In other words, "a viable § 1962(c) action requires a claim against defendant 'persons' acting through a distinct 'enterprise.'" *Jaguar Cars, Inc. v. Royal Oaks Motor Car Co.*, 46 F.3d 258, 268 (3d Cir. 1995). In *In re Ins. Brokerage Antitrust Litig.*, 2006 WL 2850607, at *17 (D.N.J. Oct. 3, 2006), the Court explained that a RICO claim cannot be pled "simply by alleging that the conduct of one aspect of Defendants' activities through fraud constitutes the racketeering activity." Instead, a plaintiff must demonstrate the existence of an "enterprise," functioning as an independent, free-standing association-in-fact, which "engages in a pattern of activity which differs from the usual and daily activities of its members." *Id.* The Court dismissed the RICO claim because Plaintiffs had not sufficiently averred that the alleged enterprise had an existence of its own, and performed functions other than the perpetration of the predicate racketeering acts. *Id.*; *Accord Parrino v. Swift*, 2006 WL 1722585, at *3 (D.N.J. June 19, 2006) (dismissing RICO claims where Plaintiffs had "alleged that the conspiracy to defraud was the same thing as the enterprise").

Ferguson v. Moeller, 2016 WL 1106609, at *5 (footnote omitted).

In addition, the RICO statute defines a "pattern of racketeering activity" as requiring "at least two acts of racketeering activity" within a ten year period. 18 U.S.C. § 1961(5). See Tabas

v. Tabas, 47 F.3d 1280, 1290 (3d Cir. 1995).[3] "[T]o prove a pattern of racketeering activity a plaintiff must show that the racketeering predicates are related, and that they amount to or pose a threat of continued criminal activity." H.J. Inc. v. Northwestern Bell Telephone Co., 492 U.S. 229, 239 (1989). Predicate acts are related if they "have the same or similar purposes, results, participants, victims, or methods of commission, or otherwise are interrelated by distinguishing characteristics and are not isolated events." Id. at 240. In sum, a plaintiff must prove a "continuity of racketeering activity." Id.

Here, Plaintiff has not alleged any facts regarding an on-going organization or any on-going decisionmaking. Nor has Plaintiff alleged any facts regarding an actual role for each Defendant or how they collaborated or coordinated their activities in a functional continuing unit. Moreover, contrary to Plaintiff's conclusory assertion in her RICO Statement, Plaintiff has not pled any facts regarding the existence of any activities beyond the alleged racketeering. Plaintiff therefore has failed to set forth facts from which the existence of an enterprise can be inferred. Indeed, nowhere in Plaintiff's 53 page, 114 paragraph Complaint or the 60 page RICO Statement does the term "enterprise" appear. Rather, Plaintiff's RICO claims are premised on allegations that Defendants "acted in concert" and "conspired" with one another, which suggests no more than Defendants engaged in a simple conspiracy to induce Plaintiff to enter into a void marriage. ECF Nos. 1, 2, *passim.* See In re Ins. Brokerage Antitrust Litig., 618 F.3d at 367, *quoting* Boyle v. U.S., 556 U.S. at 949 ("proof of a conspiracy to commit a RICO predicate offense [does not] 'necessarily establish that the defendants participated in the affairs of an . . . enterprise through a

---
[3] "Racketeering activities" is defined in 18 U.S.C. § 1961(1) and includes acts that are indictable under certain provisions of title 18 of the United States Code.

pattern of . . . crimes'"); Seville Indus. Mach. Corp. v. Southmost Mach. Corp., 742 F.2d 786, 790 n.5 (3d Cir. 1984), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557 ("[b]y limiting its allegations of conspiracy to the underlying offenses, [the plaintiff] has affirmatively negated the existence of . . . an enterprise separate and apart from the pattern of activity in which it engages"); In re Am. Inv'rs Life Ins. Co. Annuity Mktg. & Sales Practices Litig., 2006 WL 1531152, at *8 (E.D. Pa. June 2, 2006) ("[a]llegations demonstrating a conspiracy to perform an underlying criminal offense, standing alone, are not sufficient to allege the existence of an enterprise").

Furthermore, the predicate acts upon which Plaintiff relies do not serve to establish a pattern of racketeering activity. ECF No. 2 at 20-33. 18 U.S.C. § 1028(a) relates to fraudulent activity in connection with an "authentication feature," "identification document," or "false identification document." Plaintiff's only allegations relative to a document revolve around the marriage license which does not fall under any of the above categories and does not appear to be an identification document. See 18 U.S.C. §§1028(d)(1), (3), (4).

Plaintiff also claims Defendants' actions ran afoul of 18 U.S.C. § 1341 and 1343 which concern mail fraud and wire fraud, respectively. Aside from the fact that Plaintiff has failed to plead these claims with the requisite particularity,[4] her claims revolve around money that Plaintiff sent from Pennsylvania to Wood in West Virginia to rebuild his house; money Wood

---

[4] Contrary to Plaintiff's assertion, she is obligated to meet the stringent pleading standard set forth in Fed. R. Civ. P. 9(b) and plead with particularity her fraud-based RICO claims. Silverstein v. Percudani, 207 F. App'x 238, 239-40 (3d Cir. 2006), *citing* Lum v. Bank of America, 361 F.3d 217, 224 (3d Cir. 2004), *abrogated in part on other grounds by Twombly*, 550 U.S. at 557, and Saporito v. Combustion Engineering Inc., 843 F.2d 666, 673 (3d Cir. 1988), *vacated on other grounds*, 489 U.S. 1049 (1989) ("[b]ecause the predicate acts alleged here are acts of fraud, Silverstein was required to plead those allegations with particularity pursuant to Fed. R. Civ. P. 9(b). . . . the plaintiff should plead the date, place or time of the fraud, and allege with specificity who made the relevant misrepresentations"). See 5J Oilfield Services, LLC v. Pecha, 2013 WL 3458163, at *4-5 (W.D. Pa. July 9, 2013).

took from Plaintiff's business in Pennsylvania and sent to his accounts in West Virginia; money Wood received from Plaintiff in the form of spousal support and health insurance; and money that Wood received from Plaintiff by routinely using her credit cards. ECF No. 2 at 29-31. These assertions, however, only implicate Wood and do not suffice to show that the predicate acts were committed by the alleged RICO enterprise or that Stinespring and/or the Conference were in anyway involved in the alleged fraud. See Ferguson v. Moeller, 2016 WL 1106609, at *4, *quoting* Irish v. Ferguson, 970 F. Supp. 2d 317, 345 (M.D. Pa. 2013), *quoting* Reves v. Ernst & Young, 507 U.S. 170, 185 (1993) ("[a] person cannot be held liable under § 1962(c) unless he/she has participated in the operation or management of the RICO enterprise itself. Plaintiff must show that each Defendant conducted or participated in the conduct of the '*enterprise's* affairs,' not just their *own* affairs") (emphasis in original) (internal quotations omitted). In fact, as argued by Defendants, Plaintiff has not alleged any facts whatsoever regarding the Conference itself and/or the manner in which it was purportedly involved in any of the alleged wrongdoing. As such, the Conference is properly dismissed from the action on this basis alone.

Moreover, Plaintiff has not alleged any specific facts to suggest that Stinespring was associated with the alleged enterprise after the marriage ceremony.[5] The only exception is Plaintiff's single statement in the Complaint that the Conference, Wood and Stinespring "all received money from Plaintiff for their conspiracy and unlawful acts against [Plaintiff]." ECF

---

[5] It is not sufficient to assert allegations against "Defendants" generally without specifying as to each Defendant the fraudulent act with which they are being charged. See Silverstein v. Percudani, 422 F. Supp. 2d 468, 473 (M.D. Pa. 2006), *aff'd*, 207 F. App'x 238 (holding that "a complaint that 'lumps' together numerous defendants does not provide sufficient notice of which defendants allegedly made the misrepresentations"); Naporano Iron & Metal Co. v. Am. Crane Corp., 79 F. Supp. 2d 494, 511 (D.N.J. 1999) ("[p]leadings containing collectivized allegations against 'defendants' do not suffice"). See also Lum v. Bank of America, 361 F.3d at 224 ("[p]laintiffs also must allege who made a misrepresentation to whom and the general content of the misrepresentation").

No. 1 ¶ 42. Plaintiff's conclusory statement in this regard, however, does not provide a plausible basis to find that Stinespring or the Conference were involved in mail or wire fraud. It therefore appears that any mail or wire fraud that may have been committed was committed solely by Wood. See Ferguson v. Moeller, 2016 WL 1106609, at *7-8 (finding it "entirely unclear" how the alleged predicate acts of fraud were committed by the alleged enterprise where the defendant Moeller acted unilaterally to defraud the plaintiffs and concluding that the plaintiffs were attempting to bootstrap a common law fraud into a RICO violation).

Furthermore, to the extent Plaintiff's claims revolve around money that she sent to Wood from Pennsylvania to West Virginia, such as the payments for spousal support and health insurance, the predicate act appears to have been performed by Plaintiff herself and not by Defendants. See id. ("Plaintiffs cannot plead a cognizable RICO claim against Defendants based on their own actions"). See also U.S. v. Bergrin, 650 F.3d 257, 267 (3d Cir. 2011) ("It is the 'person' charged with the racketeering offense -- not the entire enterprise -- who must engage in the 'pattern of racketeering activity'").

Similarly, Plaintiff's claim that Defendants' predicate acts included violations of 18 U.S.C. § 1957, relating to engaging in monetary transactions in property derived from specified unlawful activity, appears to revolve solely around Wood's actions and not that of Stinespring, the Conference and/or the alleged enterprise. ECF No. 2 at 33.

The only other alleged predicate act to which Plaintiff points is a violation the Mann Act, 18 U.S.C. § 2421, which, as discussed *infra*, relates to white slave trafficking. Plaintiff alleges that Defendants violated the Mann Act by fraudulently and illegally inducing Plaintiff to cross state lines in order to conduct an unlawful and void marriage. ECF No. 2 at 32. Even if Plaintiff

were to succeed in establishing a violation of the Mann Act, which is doubtful, Plaintiff would still be unable to establish that Defendants' "enterprise" engaged in a pattern of racketeering activity as a "pattern" requires that two predicate acts be committed within a ten year period. 18 U.S.C. § 1961(5).  Plaintiff's claim of illegally transporting Plaintiff into West Virginia to perform a sham marriage, however, is a single occurrence and thus does not evidence a pattern of racketeering activity.  Plaintiff, therefore, has failed to state a claim under Section 1962(c).

        **3.**        **Section 1962(d)**

Section 1962(d) creates a cause of action for conspiracy to violate RICO Sections 1962(a)-(c). To plead conspiracy in a RICO case, a complaint must set forth factual allegations that indicate 1) the period of the conspiracy, 2) its intended purpose, 3) the specific actions taken by the conspirators in furtherance of the conspiracy, 4) agreement to commit predicate acts, and 5) knowledge that the acts agreed upon formed part of a pattern of racketeering activity. Ferguson v. Moeller, 2016 WL 1106609, at *8–9, *citing* Glessner v. Kenny, 952 F.2d 702, 714 (3d Cir. 1991).  Plaintiffs must allege facts to show that each Defendant objectively manifested an agreement to participate, directly or indirectly, in the affairs of a RICO enterprise through the commission of two or more predicate acts.  Id., *citing* Smith v. Jones, Gregg, Creehan & Gerace, LLP, 2008 WL 5129916, at *7 (W.D. Pa. Dec. 5, 2008).

In the instant case, because Plaintiff has failed to state a claim under any of the substantive provisions of the RICO statute, she cannot proceed under the conspiracy subsection. Salinas v. U.S., 522 U.S. 52, 65 (1997) ("[a] conspirator must intend to further an endeavor which, if completed, would satisfy all of the elements of a substantive criminal offense"); Hlista v. Safeguard Properties, LLC, 649 F. App'x 217, 222 (3d Cir. 2016) ("when the pleadings do not

state a substantive RICO claim, the RICO conspiracy claim must fail"); Kolar v. Preferred Real Est. Investments, Inc., 361 F. App'x 354, 367 (3d Cir. 2010), *citing* Efron v. Embassy Suites (Puerto Rico), Inc., 223 F.3d 12, 21 (1st Cir. 2000) ("[a] conspiracy claim under section 1962(d) may survive a factfinder's conclusion that there is insufficient evidence to prove a RICO violation . . . but if the pleadings do not state a substantive RICO claim upon which relief may be granted, then the conspiracy claim also fails").

Moreover, Plaintiff's alleged RICO conspiracy claim is virtually identical to her alleged Section 1962(c) claim. There are no specific allegations regarding the participation and agreement to join an alleged conspiracy as to each Defendant, nor any facts regarding an agreement to conduct a RICO enterprise through a pattern of predicate acts. Thus, for the reasons set forth above, Plaintiffs have failed to state a cognizable Section 1962(d) claim. Accordingly, Plaintiff has failed to plead a plausible RICO claim and Count I of the Complaint will be dismissed.

### B. Plaintiff's Mann Act Claims (Count II)

At Count II of the Complaint, Plaintiff purports to bring a claim pursuant to Section 2421 of the Mann Act, which is also referred to as the "White Slave Traffic Act."

Congress enacted the Mann Act in 1910, "to prohibit . . . the interstate transportation of women for purposes of prostitution, 'debauchery,' or 'any other immoral purpose.'" U.S. v. Mercado-Flores, 109 F. Supp. 3d 467, 468 (D.P.R. 2015). The Mann Act currently makes it a federal crime to knowingly transport (1) "any individual" with the intent that the individual engage in prostitution or "any sexual activity for which any person can be charged with a

14

criminal offense," or (2) a minor with the intent that the minor engage in prostitution or criminal sexual conduct. Id., *citing* 18 U.S.C. §§ 2421–2424.

Defendants have argued that Plaintiff's Mann Act claims should be dismissed for a variety of reasons, none of which have been addressed by Plaintiff.[6] Most compelling, however, is Defendant Wood's argument that Plaintiff's claim should be dismissed because the Mann Act is a criminal statute and does not provide for a private right of action. As Wood has pointed out, the two cases that have addressed the issue have found that no private right of action exists. Jordan v. Cicchi, 2010 WL 848809, at *12 (D.N.J. Mar. 9, 2010), *aff'd in part, vacated in part on other grounds*, 428 F. App'x 195 (3d Cir. 2011) ("[t]he White Slave Traffic Act . . . and the related sexual abuse statutes at 18 U.S.C. §§ 2241, 2242, 2244, are criminal statutes and do not give rise to any private right of action"); Twist v. Lara, 2007 WL 2088363, at *4–5 (S.D. Tex. July 19, 2007), *citing* Cort v. Ash, 422 U.S. 66, 78-79 (1975) (discussing the United States Supreme Court's four part test to determine when federal courts may infer a civil remedy from a federal statute and concluding that "Matthew's federal claim under the Mann Act, 18 U.S.C. § 2421, does not provide a private right of action").

Although Plaintiff cites to 18 U.S.C. § 1595(a) as providing for a civil remedy, Section 1595(a) only provides for a civil remedy for violations of "this chapter [18 USCS §§ 1581 et seq.]," which is Chapter 77 prohibiting "Peonage, Slavery, and Trafficking in Persons." Plaintiff, however, has brought her claim under the Mann Act which is Chapter 117 and does not provide for a civil remedy except to persons who were minors at the time of the violation. See 18 U.S.C.

---

[6] Indeed, the extent of Plaintiff's opposition to Defendants' various arguments is that a fair reading of the Mann Act section of the Complaint "clearly sets forth the claim." ECF No. 32 at 4, ¶ 3.

§ 2255. As such, Plaintiff's claim brought at Count II pursuant to the Mann Act is properly dismissed.

### C. Plaintiff's Thirteenth Amendment Claims (Count VII)

The Thirteenth Amendment to the Constitution provides that "[n]either slavery nor involuntary servitude, except as a punishment for crime whereof the party shall have been duly convicted, shall exist within the United States, or any place subject to their jurisdiction." U.S. Const. amend. XIII. See U.S. v. Kozminski, 487 U.S. 931, 942 (1988). It also provides that "Congress shall have the power to enforce this article by appropriate legislation." U.S. Const. amend. XIII. To that end, Congress enacted 18 U.S.C. § 1584, pursuant to which Plaintiff brings her claim at Count VII. Section 1584 provides criminal penalties for "[w]hoever knowingly and willfully holds to involuntary servitude or sells into any condition of involuntary servitude, any other person for any term . . . ." The United States Supreme Court has held that "the term 'involuntary servitude' necessarily means a condition of servitude in which the victim is forced to work for the defendant by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process." U.S. v. Kozminski, 487 U.S. at 952. Citing to Kominski for the proposition that "the phrase 'involuntary servitude' was intended . . . 'to cover those forms of compulsory labor akin to African slavery,'" the United States Court of Appeals for the Third Circuit has found that "[m]odern day examples of involuntary servitude have been limited to labor camps, isolated religious sects, or forced confinement." Zavala v. Wal Mart Stores Inc., 691 F.3d 527, 540 (3d Cir. 2012), quoting U.S. v. Kozminski, 487 U.S. at 942; Steirer v. Bethlehem Area Sch. Dist., 987 F.2d 989, 999 (3d Cir. 1993).

In the instant case, Plaintiff has alleged no facts in the Complaint from which it could be

inferred that she was forced to work for Defendants and certainly not that she was forced to work by the use or threat of physical restraint or physical injury, or by the use or threat of coercion through law or the legal process. Indeed, Plaintiff has not address the issue at all in her Brief in Opposition and thus has seemingly conceded the issue. As such, Count VII of the Complaint will be dismissed.

### D. Plaintiff's State Law Claims (Counts III, IV, V, VI)

Having found that Plaintiff is unable to sustain her federal claims brought against Defendants, only Plaintiff's state law claims for negligence, fraud, negligent misrepresentation, and common law conspiracy remain. Where all claims over which the Court has original jurisdiction have been dismissed, however, the district court may decline to exercise supplemental jurisdiction over the remaining claims. 28 U.S.C. § 1367(c)(3). Although declining to exercise jurisdiction is within the discretion of the district court, the United States Court of Appeals for the Third Circuit has held that, absent extraordinary circumstances, "pendent jurisdiction should be declined where the federal claims are no longer viable." Shaffer v. Bd. of Sch. Dir. Albert Gallatin Area Sch. Dist., 730 F.2d 910, 912 (3d Cir. 1984) (citations omitted). See Noble v. Gaston, 2009 WL 198252, at *5 (W.D. Pa. Jan. 27, 2009).

Here, there do not appear to be any extraordinary circumstances surrounding this case which would warrant the exercise of supplemental jurisdiction over Plaintiff's state law claims and thus the Court declines to do so. If Plaintiff wishes, she may proceed with the remaining state law claims in state court.

## IV. CONCLUSION

For the foregoing reasons, Defendant Wood's Motion to Dismiss and the Motion to dismiss filed by Defendants Stinespring and the Conference are properly granted. Accordingly, the following Order is entered:

### ORDER

AND NOW, this 5th day of January, 2017, upon consideration of the Motion to Dismiss filed on behalf of Defendant Wood, the Motion to Dismiss submitted on behalf of Defendants Stinespring and the Conference, and Plaintiff's Brief in Opposition to Defendants' Motions to Dismiss, IT IS HEREBY ORDERED that Defendant Wood's Motion to Dismiss, ECF No. 16, is GRANTED, and Defendants Stinespring and the Conference's Motion to Dismiss, ECF No. 19, is also GRANTED. IT IS FURTHER ORDERED that Plaintiff's Motion to Stay the state court divorce and support proceedings is DENIED as moot and the Clerk of Court is to mark the case closed.

IT IS FINALLY ORDERED that, pursuant to Rule 4(a)(1) of the Federal Rules of Appellate Procedure, if Plaintiff wishes to appeal from this Order she must do so within thirty (30) days by filing a notice of appeal as provided in Rule 3, Fed. R. App. P., with the Clerk of Court, United States District Court, 700 Grant Street, Room 3110, Pittsburgh, PA 15219.

BY THE COURT:

/s/ Maureen P. Kelly
MAUREEN P. KELLY
CHIEF UNITED STATES MAGISTRATE JUDGE

cc: All counsel of record by Notice of Electronic Filing